EXHIBIT 1

Plaintiffs claim is an example of course of action presented by all and each one of the members of the class action. This narrative and presentation of causes of action pertain to Plaintiff, but his claims will also be those of each and every member of the class.

## SWORN STATEMENT OF RYAN DARK WHITE

I was arrested on October 2, 2015, arrived October 3, 2015 at CDF Baltimore. I met with the first public defender approximately on October 5, 2015 at the Courthouse. I had two public defenders. We had dozens of meetings in those rooms and discussed everything. Later when I pushed the issue of conversations being "compromised", they both dropped me for a "conflict."

My next attorney was a private attorney working for the court system as a "panel attorney". He told me a great deal about how things worked with the booths, and he said that's the way it is. He said it was business as usual, and if he brought it up in court he wouldn't get any more work.

The Prosecutor knew what was discussed in the rooms with my lawyer and repeated the information verbatim, on the record. I was told by the prosecutor that they would charge someone with the barest of suspicion, then "let them talk" (to their attorneys) and allow them to hang themselves, so to speak. That's how common it was.

I was originally charged with possession with intent; I told my attorney that over half the pills they took were just empty capsules. I can't digest gelatin, so I was emptying it. In court,

the prosecutor specifically addressed this and made sure to say that all the pills were full and contained medication. This is actually in my paperwork and on the record. I had never said that to anyone outside of my attorney in the booth. I had mentioned to my attorney that I had a very rare DEA exception letter allowing me to have that much medication. I found out the prosecutors called the next day, confirmed this with the DEA, and changed the charge from Possession with Intent to Insurance Fraud.

I was allowed to speak at my sentencing, and when I spoke about the violations it was recorded on a "sealed" transcript. The Judge ordered that recordings be stopped and separate recording be started.

I spoke directly with the prosecutor in my case several times, both with and without an attorney present. I understand this is unusual. I brought up the subject of him and other prosecutors listening to these privileged conversations, and his first response was "don't go there", and then it was "That's none of your business--don't tell me how to do my job", and "That's the way it is and there's nothing you can do about it."

After that last exchange, both of my attorneys refused to even address the issue, and if I said something they would ignore it completely and just look at me. I decided that the next meeting I was going to bring it up, and that when he sat there looking at me I would have a staring contest until I got some answers. When it occured, we stared at each other for a few minutes, he got up and said, "I'll see you again after the holidays if you want to discuss your plea" (Christmas 2015) -- and in January he removed himself for a conflict also.

14

My male public defender worked with the first one. He never carried any files or briefcase--nothing. He never gave me a card, nothing. He was there to coax me into accepting how things are and into accepting the plea. He knew all about the rooms. "Been like that forever" and "this is your first federal hit, you just don't understand yet how everything is done."

He was the "closer" sent in to get me to go along, we discussed the case many times before I fully understood just how much the prosecutors knew about what went on in there.

It was later, when I discovered from more than one source just how bad it was in there and how blatantly the prosecutors invaded your discussions. I also heard with my own ears my prosecutor quote me, verbatim, in court and on the record, items that had never been discussed outside those rooms with my lawyers.

I demanded that this stop and we started documenting just what was happening to everyone, when it became known that we had written to politicians and that investigations had begun, BOTH my public defenders developed an immediate "conflict" and removed themselves.

At no time would either one discuss for more than a couple minutes going to trial. I was constantly ignored or dissuaded about trial.

I was forced like everyone else to choose the lesser of two evils. There was no fairness to it. It was like being raped. This was going to happen and nothing could change it. If you even mentioned it then it would be even worse and they would go after your spouse/family.

I had two public defenders who removed themselves later for a "conflict" when I complained about the prosecutor. I then had an assigned panel attorney.

I met with the first public defender in those rooms several times. We discussed the entire case and strategy as well as my medical condition and case. My attorney informed me on the second visit that they call these rooms "the whisper rooms."

"We know that p.J. (the prosecutor in my case) hears us so the best thing is to make a plea offer."

She played some video evidence in the case and then said "I shouldn't even be playing these in here and talking about them. It's just the way it is." Prosecutor knew exactly what I/we said about videos.

I asked why the prosecutor was allowed to do this, to "listen to everything we discussed", and her reply was "that's the way things are done here." I said, "then I won't discuss anything." Her reply was, "it's the only way we'll get a decent plea offer, if you clam up or try to go to trial, he'll use everything he heard against you. It's easiest and best for you to just not make waves and you'll get a much shorter plea offer."

I said I wanted to go to trial. "I didn't do anything wrong, I had all my medication legally and accounted for and was following Dr.'s orders." She then said, "if you try to go to trial he'll keep you here for a couple years and you'll still have to prepare in here. He'll know everything anyway but then you'll be facing 10 years or more. Believe me, this is just how it's done, you've got to be smart here."

16

My assigned panel attorney knew all about these issues as well, and would not address it unless I hired him privately.

By this time, everyone was aware that we had contacted government people and no one wanted to hear about it. They all got very quiet and waited to see what became of the investigations. When my prosecutor found out I had spoken to the government, and investigations had begun, he tried to RESCIND my plea agreement at sentencing and asked for three (3) times the length of sentence to keep me quiet.

Ryan D. White
3-3-2017